WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victoria Terrazas, et al., | No. CV-19-04340-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Carla Vista Sober Living LLC, et al., | |
| Defendants. | |

Before the Court are Defendants' Motion for Summary Judgment or in the Alternative, for Partial Summary Judgment, (Doc. 114), and Plaintiffs' Combined (1) Response to Defendants' Motion for Summary Judgment, and (2) Cross-Motion for Partial Summary Judgment, (Doc. 125). The Court held oral argument on the motions on August 20, 2021. For the following reasons, both motions are denied.

## BACKGROUND

Defendants Carla Vista Sober Living LLC, Gonzalo Ardavin, Alisa Ardavin, and Tom Fay (collectively "Defendants") own and operate residence homes which provide a structured environment for recovering addicts to transition out of primary addiction treatment. Plaintiffs are ten former employees who were employed as "House Managers" at Defendants' homes. Plaintiffs assert that, as House Managers, they were not paid in accordance with FLSA minimum requirements.

House Managers worked for Defendants' "Legacy" program, which was designed

to provide support for addicts who had already completed primary treatment. (Doc. 115-1 at 3.) Clients in Defendants' homes followed a daily schedule which included time to wake up, eat, and leave the residence for intensive outpatient treatment. (Docs. 115-3 at 3; 116 at 2.) House Managers oversaw this schedule and were responsible for transporting residents to and from their intensive outpatient treatment. *Id.* In the afternoons, residents held meetings and ate dinner. *Id.* To hold the position, House Managers were required to have a valid driver's license and be certified in CPR. (Docs. 116-7 at 4; 126-2 at 56.) They worked a rotating schedule where they worked three consecutive days one week and four consecutive days the next. (Docs. 115 at 3; 126 at 3.)

In 2018, the Department of Labor ("DOL") conducted an investigation of the Legacy program and the payment of House Managers. *See* (Doc. 115-16.) When the DOL shared its findings with Defendants, they agreed that they were not in compliance. (Doc. 116-1 at 3–4.) Defendants assert, however, that they "reluctantly" agreed with the findings because they did not believe they could continue operating without doing so. *Id.* Defendants assert that it also began dismantling the Legacy program in 2018 because it was no longer "a viable program." *Id.*

Both Plaintiffs and Defendants now move for summary judgment.

## DISCUSSION

### I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

**II.   Analysis**

  **A.  FLSA Claims**

The FLSA establishes uniform national minimum standards for various working conditions, including wages and hours, in businesses covered by its provisions. It is a remedial statute that is "to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993); *see also* 29 C.F.R. § 779.101 ("An employer who claims an exemption under the Act has the burden of showing that it applies.").

    **1.  The Scope of FLSA Coverage**

The FLSA applies on an individual basis to employees "engaged in commerce or in the production of goods for commerce" and on an enterprise-wide basis to all employees "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). Enterprise coverage applies to three types of businesses: (1) businesses with more than $500,000 in gross sales and employees "handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce"; (2) businesses that are "engaged in the operation of a hospital, an institution primarily engaged in care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution"; and (3) businesses whose activities are that of a public agency.[1] 29 U.S.C. § 203(s)(1). "Although the determination of 'enterprise coverage' under the FLSA is a question of law, it must be resolved on the facts of each case." *Probert v. Fam. Centered Servs. of Alaska, Inc.*, No. 4:07-CV-0030-RRB, 2008 WL 11337211, at *4 (D. Alaska Sept. 12, 2008) (citing *Donovan v. Weber*, 723 F.2d 1388, 1392 (8th Cir. 1984)).

Pursuant to 29 U.S.C. § 203(s)(1)(A), a business is an enterprise engaged in commerce when it (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an "annual gross volume of sales made or business done" of $500,000 or more. 29 U.S.C. § 203(s)(1)(A). The parties do not dispute that Defendants' income meets the statutory requirement; therefore, only the first requirement for enterprise coverage is at issue here.

The definition of "enterprise engaged in commerce" specifically states that an enterprise's employees are engaged in commerce if they handle, sell, or work on goods that were moved in commerce "by any person." 29 U.S.C. § 203(s)(1)(A)(i). Courts in the Ninth Circuit have adhered to this broad definition. *See, e.g.*, *Balce v. Lucky Chances, Inc.*, No. C 07-01090 JSW, 2008 WL 564792, at *3 (N.D. Cal. Feb. 28, 2008) (holding that evidence a restaurant sells imported beer is sufficient to create a question of fact as to whether employees handle or sell goods that have moved in interstate commerce). The scope of enterprise coverage under the FLSA thus includes businesses engaged in purely intrastate activities if their employees handle goods that have moved in interstate

---

[1] Although Defendants assert this requirement is jurisdictional, courts have held that enterprise coverage is not a jurisdictional requirement, but rather an element of an FLSA claim. See *Velasco v. Elliot*, No. 18-CV-03191-VKD, 2018 WL 6069009, at *3 (N.D. Cal. Nov. 20, 2018); *Jiang v. Lee's Happy House*, No. 07–CV–03606–RS, 2007 U.S. Dist. LEXIS 80861, at *6–7 (N.D. Cal. Oct. 23, 2007); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

commerce. *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981). The Act "imposes no requirement that the goods have a present involvement in interstate commerce when they are handled or sold." *Id.* at 18. Instead, the statute covers "all employees within the stream of commerce of such goods, even if their own participation remains purely intrastate." *Id.* at 18–19.

Here, there is evidence that Defendants' employees handled, sold, or otherwise worked on goods moved in or produced for commerce. Specifically, a DOL audit report found Defendants within the scope of the FLSA because their employees used Bic pens and Dell computers, both goods that have moved in commerce. (Doc. 115-16 at 6.) At oral argument, Defendants did not dispute that their employees used these goods, asserting instead that the use was insufficient because it did not relate to Defendants' business purpose. Defendants conceded they lacked legal authority for this proposed limitation. Because the DOL report is evidence that Defendants interacted with goods that have moved in commerce, Defendant is properly subject to the FLSA.

### 2. Statute of Limitations

Under the FLSA, the length of the statute of limitations turns on whether the employer's breach was willful. 29 U.S.C. § 255(a). If an employer commits a "willful violation," the statute of limitations is three years, but for all other cases, the limitations period is two years. *Id.* With this two-tiered approach, "Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).

An employer's conduct is willful if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Richland Shoe Co.*, 486 U.S. at 133; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). Mere negligence is not willfulness, and a "good-faith but incorrect assumption" that conduct complies with the FLSA does not trigger the three-year limitations period. *Richland Shoe Co.*, 486 U.S. at 133. In fact, an employer does not act willfully unless it is reckless, even if the employer is unreasonable in determining its FLSA obligations. *Id.* at 135 n.13.

Reckless disregard includes "failure to make adequate inquiry into whether conduct is in compliance" with the FLSA, 5 C.F.R. § 551.104, and an employer thus acts willfully by "disregard[ing] the very 'possibility' that it was violating the statute." *Alvarez*, 339 F.3d at 908–09. The Court, however, will not "presume that conduct was willful in the absence of evidence." *Id.* at 909. "Whether or not a violation of the FLSA was willful is a question of fact properly submitted to a jury" so long as there is a genuine issue of material fact. *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1160–61 (C.D. Cal. 2000) (citing *Brinkman v. Dep't of Corr.*, 21 F.3d 370, 373 (10th Cir. 1994)); *see also Acosta v. Zhao Zeng Hong*, 704 F. App'x 661, 664 (9th Cir. 2017) ("Ultimately, the jury concluded . . . that Appellants' violations were willful and not made in good faith.").

Here, reasonable juries could disagree on whether Defendants' conduct was willful. On the one hand, Defendants had no prior history of audits or noncompliance, and Mr. Controne avows that he never received any complaints from contractors regarding their rate of pay. (Docs. 116-15; 116-18 at 3.) Yet there is also evidence that Alisa and Gonzalo Ardavin operated a prior construction business where they employed both W-2 employees and independent contractors. (Doc. 116-17.) Further, Defendant Carla Vista Sober Living has employed W-2 employees and has previously paid House Managers hourly wages. (Doc. 116-2.) These facts demonstrate that there is a genuine issue of material fact as to whether Defendants acted willfully; summary judgment in favor of either party is denied.

### 3. Employees or Independent Contractors

For FLSA protections to attach, Defendants must be "employers" and Plaintiffs must be "employees" under the Act. "Courts have adopted an expansive interpretation of the definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

While employees are covered under the FLSA and entitled to the protections the FLSA provides, independent contractors are not. When classifying an individual as an employee or independent contractor, "[e]conomic realities, not contractual labels

determine employment status for the remedial purposes of the FLSA." *Id.* at 755. As explained in *Real*,

> The courts have identified a number of factors which may be useful in distinguishing employees from independent contractors for purposes of social legislation such as the FLSA. Some of those factors are:
> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* at 754.

This inquiry is a mixed question of law and fact. The determination of "the nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004); *see Real*, 603 F.2d at 755 ("Upon examining the record in light of these standards, we conclude that the district court erred in ruling that the appellants failed to raise genuine issues of fact as to whether they are 'employees' . . . under the FLSA."). When the record contains evidence that supports contradictory findings regarding the nature of an employee's work, an inquiry into the facts must be made. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1128 (9th Cir. 2002).

Here, although the parties acknowledge the economic realities test in their briefing, neither provides any explanation for how their proffered facts affect an analysis under the test. Rather, both parties list facts, primarily taken verbatim from their corresponding statements of facts, which they conclude establish a genuine issue of material fact or lack thereof. The Court declines to analyze these facts under the test for the first time on the parties' behalf. Because Plaintiffs do not undertake to explain why, as a matter of law, the *Reed* factors establish that they were employees, they have not met their burden of

demonstrating they are entitled to summary judgment on this ground. *See Ruiz v. Affinity Logistics Corp.*, No. 05CV2125 R (CAB), 2006 WL 3712942, at *2 (S.D. Cal. Nov. 9, 2006). To the contrary, Defendants' list of controverting facts establishes that a genuine dispute of material facts remains as to the nature of Plaintiffs' work. Defendants dispute, for example, the number of hours that Plaintiff's worked during their shifts, whether house managers were bound by the group home's "Activity Schedule," whether House Managers were required to wear a uniform, and whether House Managers were required to complete I-9 employment forms. (Doc. 127 at 9–10.). The contested nature of these facts establishes that a genuine issue of material fact remains.

### 4. FLSA Retaliation Claim

"The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999). Accordingly, the FLSA makes it "unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the Act. 29 U.S.C. § 215(a)(3).

To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in activity protected by the FLSA; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Peak v. Forever Living Prod. Int'l Inc.*, No. CV-11-00903-PHX-SRB, 2013 WL 12198834, at *9 (D. Ariz. Aug. 26, 2013). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for the adverse employment action. *See Spata v. Smith's Food & Drug Ctrs., Inc.*, 253 F. App'x 648, 649 (9th Cir. 2007) (applying the *McDonnell Douglas* burden-shifting framework to FLSA retaliation claims). If the defendant provides such a reason, the burden shifts back to the

plaintiff to show the proffered reason is pretextual. *Id.*

Neither party has successfully moved for summary judgment on Plaintiff Cook's retaliation claim. Defendants do not raise retaliation in their Motion. Instead, for the first time in reply, they declare that they are entitled to summary judgment on Plaintiff's retaliation claim because "Plaintiffs fail to present clear and convincing admissible evidence that Cook's service was discharged for retaliatory reasons." (Doc. 127 at 13.) Plaintiffs raise retaliation in an argument which appears only to claim that there is a genuine issue of material fact.

Regardless of whether either party has successfully raised the issue, however, a genuine dispute of material fact remains as to Plaintiff Cook's retaliation claim. There is evidence that Plaintiff Cook (1) engaged in protected FLSA activity by requesting higher wages and additional compensation for overtime; and (2) was terminated approximately two months after his complaints. *See* (Doc. 126-2.) Further, the timing of the termination is sufficient evidence of a causal link between the protected activity and the adverse action to create a genuine issue of material fact. *Dawson*, 630 F.3d at 936. Defendants do not provide a legitimate, nonretaliatory reason for the adverse employment action. Although their contradictory evidence may indeed undermine Plaintiffs' prima facie case, it does not establish a nonretaliatory reason for Plaintiff Cook's termination. The controverting facts merely prove that a genuine issue of material fact remains. Thus, to the extent that any party seeks summary judgment on Plaintiff Cook's retaliation claim, the Motions are denied.

### B. Plaintiffs' State Law Claims

Although Plaintiffs assert that Defendants are not entitled to summary judgment on their state law claims because they were employees rather than independent contractors, Defendants do not seek summary judgment on Plaintiffs' state law claims. In fact, as no party has properly sought judgement on state law claims, to the extent either party seeks summary judgment in their responsive briefing, their motions are denied. As discussed above, because the parties dispute facts such as the nature and intensity of the Plaintiffs'

"fireman schedule" and the employment forms Plaintiffs completed, there is a genuine issue of fact as to whether Plaintiffs were employees or independent contractors.

## CONCLUSION

For the reasons set forth above, both parties' motions are denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment or in the Alternative, for Partial Summary Judgment, (Doc. 114), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Combined (1) Response to Defendants' Motion for Summary Judgment, and (2) Cross-Motion for Partial Summary Judgment, (Doc. 125), is **DENIED**.

Dated this 13th day of September, 2021.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge